THE REYNOLDS CARD MANUFACTURING COMPANY, Respondent, *v.*
NEW YORK BANK NOTE COMPANY, Appellant.

*Contract — variance between the complaint and the evidence — measure of damages.*

In an action brought to recover the price of paper sold and damages for the breach of an executory contract to purchase paper, it appeared that the damages were claimed under an executory contract, alleged to have been made about September 1, 1887, by which the plaintiff agreed to sell 1,000 tons of paper, to be delivered at the rate of twenty tons per month, at the price of eighty-five dollars per ton, which was to be used by the defendant in manufacturing tickets for the elevated railroads of New York city. The complaint alleged that the defendant agreed to return to the plaintiff the canceled tickets which had been manufactured from the paper, and that for these the plaintiff agreed to pay fifteen dollars per ton.

The defendant denied the execution of the contract, and set up a counterclaim for canceled tickets alleged to have been purchased by the plaintiff and not paid for. A verdict was rendered for the amount claimed by the plaintiff less the amount due the defendant for canceled tickets, and from the judgment entered thereon the defendant appealed.

*Held,* that as the verdict was supported by the evidence it would not be disturbed;

That a variance between the complaint and the evidence, in that the complaint alleged that the contract was made on or about the 1st of September, 1887, and the evidence showed that it was entered into in February, 1888, was not material, as it did not appear that the defendant was misled thereby;

That the measure of damages, as to the paper which the defendant refused to take, was the difference between the contract price and its actual value;

That the measure of damages as to the canceled tickets was the difference between their contract price and their actual value.

APPEAL by the defendant, the New York Bank Note Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of November, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 3d day of December, 1894, denying the defendant's motion for a new trial made upon the minutes.

*Charles A. B. Pratt* and *Edward P. Lyon,* for the appellant.

*Lorenz Zeller,* for the respondent.

FOLLETT, J. :

This action was begun December 24, 1892, to recover the price of paper sold and damages for the breach of an executory contract to purchase paper. As a first cause of action it is alleged that between April 4 and July 19, 1892, the plaintiff sold and delivered to the defendant paper of the value and at the agreed price of $415.29.

As a second cause of action it is alleged that by an executory contract, made September 1, 1887, the plaintiff agreed to sell and deliver, and the defendant to purchase, 1,000 tons of paper, to be delivered at the rate of twenty tons per month, for which the defendant agreed to pay eighty-five dollars per ton, which was to be manufactured by the defendant into tickets for the elevated railroads. It is further alleged that the defendant agreed to return to the plaintiff the used tickets manufactured from such paper, for which the plaintiff agreed to pay fifteen dollars per ton.

As a breach of this contract it is alleged that after receiving 226 tons of paper the defendant refused to receive the remainder, 774 tons. It is also alleged that the plaintiff's damage is the difference between the contract price, $85 per ton, and the market value, $55 per ton, or $30 per ton on 774 tons, which equals $23,220, and also the difference between the contract price of used tickets at $15 per ton and the actual value of used tickets at $21 per ton, being $6 per ton on 774 tons, which equals $4,644, making the alleged total damages sustained $27,864. In the complaint it is alleged that 224 tons were delivered, and in the bill of particulars that 226 tons were delivered. We assume that the number of tons stated in the bill of particulars is correct, as it corresponds with the amount of damages claimed.

The defendant admits in its answer that it purchased paper of the quantity, value and agreed price as alleged in the first cause of action, and that it has not paid therefor.

The defendant, in its answer, denied that it contracted to purchase 1,000 tons of paper, but admitted that it received from the plaintiff 226 tons of paper, but not pursuant to the contract alleged in the complaint.

By way of counterclaim it is alleged that the plaintiff purchased and received used tickets of the value of $470.61, but that it had refused

to receive and pay for a large amount of canceled tickets, to the defendant's damage of $1,000, which added to the $470.61, make $1,470.61 damages set up as a counterclaim, and for which an affirmative judgment is demanded.

The plaintiff in its reply admitted that it had received used tickets, as alleged in the answer, but denied that it had contracted to purchase any used tickets except those manufactured from paper furnished by the plaintiff, and that defendant having refused to receive plaintiff's paper, it was under no obligation to purchase and pay for canceled tickets manufactured from other paper.

The issues thus joined were tried before a jury which rendered a verdict for $27,000. From this judgment the defendant appealed. When the plaintiff rested, and again at the close of the case, the defendant moved that the complaint be dismissed as to the second cause of action, on the ground that sufficient facts had not been proved to constitute a cause of action, and also upon nineteen other grounds which it does not seem necessary here to repeat. At the close of the evidence the defendant also asked the court to direct a verdict in its favor, which was denied, and an exception taken.

The defendant produced and read in evidence the following among other correspondence which passed between the litigants:

"NEW YORK BANK NOTE CO.:                     *Feby.* 8, 1888.

"GENTLEMEN.— We will make you 1,000 tons of paper, same as elevated paper at same price, to be delivered over a period of five years from date. This proposition is made on the express condition that you will take from us twenty-five tons at any time on sixty days' notice, which we will carry in stock for you, which is the limit of your liability.

"REYNOLDS CARD MANUFACTURING CO.

"GEO. B. SCHINZEL, *Pres.*"

"*February 8th,* 1888.
"GEORGE P. SCHINZEL, *President:*

"MY DEAR SIR.— We hereby order of you 1,000 tons of Manhattan Elevated Ticket Paper, subject to the following conditions:

"Paper to be web, width as required, color and quality subject to my approval, weight 80 pounds to 500 sheets of 22x28 inches, price four and one-quarter cents a pound, cash 10 days, deliveries for

five years 20 tons a month or less, as the Bank Note Co. may require; thereafter what they may require, unless Manhattan contract renewed, in which event same as before end of five years.

"You to buy all Manhattan waste at 15.00 per ton, and to carry always in stock 60 days' supply of paper, namely, 25 to 40 tons, which you can deliver any time on 60 days' notice and cancel balance of this order, and we can as limit of our liability take your stock on hand on 60 days' notice.

"It is understood that Manhattan requires less than 10 tons a month.

"This letter is given you to copy out into formal shape of even date herewith, and in accordance with your written acceptance of to-day. Yours truly,

"THE NEW YORK BANK NOTE CO.

"GEORGE H. KENDALL,

"*Treasurer.*"

The plaintiff testified that, pursuant to the last clause of the letter signed by the defendant, a written contract was prepared and signed by both parties, by which the defendant agreed to purchase 1,000 tons of paper at eighty-five dollars per ton, and agreed to sell to the plaintiff the canceled tickets manufactured from such paper for fifteen dollars per ton. It is conceded that in 1888 the defendant issued a portfolio for circulation among its customers, on the cover of which the following was printed:

"[Vignette.]

"M'ss'rs NEW YORK BANK NOTE Co.:

"Your order for 1,000 tons Ticket Paper at hand. This being the second time you have favored us with the largest order of its kind ever given in the history of the world, it is doubly prized and will receive our best attention.

"REYNOLDS CARD MFG. CO., New York."

"NEW YORK BANK NOTE Co.:

"The prompt and satisfactory delivery by you of our first One Hundred Millions of Tickets convinces us that you have unparalleled facilities for this work, and that you will succeed as well in the execution of the balance of our total order of One Billion.

"MANHATTAN ELE-VATED R. R. CO.,

"C. P. McFADDEN,

"G. T. A."

The defendant insists that this is not evidence of a contract, because at that time the plaintiff's president signed the following statement :

" The filling in of the above signature is authorized by me, and in accordance with my request to have this letter used as an advertisement, and said letter is of that significance only.   There is no contract.
          " (Signed.)               GEO. P. SCHINZEL,
                                          " *Pres.*"

The plaintiff's president denies that he ever signed such a paper, and characterizes it as a forgery.   It seems rather unnatural that at this time, when the president of the plaintiff and the officers of the defendant were friends, and having large transactions, a statement in writing of this kind should have been taken.   It was testified in behalf of the plaintiff that the written contract alleged to have been signed was returned to the defendant for the purpose of having added thereto a clause providing that the plaintiff should not sell the same kind of paper to others, and that the contract was never returned.

The plaintiff's officers swore that there was such a contract and the defendant's officers swore there never was such a contract, and in support of the testimony given in behalf of the defendant, an unexecuted draft of a contract was produced.   In opposition to this very many written orders, signed by the defendant and addressed to the plaintiff, extending through the years 1888 to 1892 inclusive, calling for the delivery of paper, were introduced in evidence, and in not one of them is there any reference to the price at which the paper was to be delivered.   Many letters signed by the defendant and addressed to the plaintiff, complaining of tardiness in delivery and about the quality of the paper, were read in evidence.   We think it is quite significant that these orders contained no reference to price, and that so many letters, complaining of tardiness in deliveries and of poor quality, should have been written, unless there was a contract.

This question of fact was fairly submitted to the jury by the learned trial judge, was determined in favor of the plaintiff, and we think rightly, as the voluminous correspondence between the litigants and their transactions extending over four years tend to support the evidence given in behalf of the plaintiff.   There is little

dispute in the case about the willingness and ability of the plaintiff to perform the contract. The plaintiff testified that August 1, 1892, he tendered to the defendant 774 tons of paper and that Mr. Kendall, the defendant's treasurer, accepted his offer provided he would deliver it all on that day. The plaintiff's president replied that he was willing to deliver it in accordance with the contract, and that it was unreasonable to require a delivery of that amount in a single day. It is now urged that the plaintiff, having refused to deliver the paper under this offer, failed to perform its contract, and the court was requested so to charge. There is no foundation for this contention. The testimony of the plaintiff's president was to the effect that he offered to deliver the 774 tons of paper in accordance with the terms of the contract, twenty tons per month, and plaintiff could not be put in default by the defendant's offer to receive all of it on a single day. This is the only exception to the charge that is argued, and no exception to the rulings upon the admission or exclusion of evidence are urged as a ground for a reversal of the judgment.

The case turns upon questions of fact, all of which were sharply litigated on the trial, were found in favor of the plaintiff, and the verdict cannot be set aside as contrary to the weight of evidence.

It is urged that there is a fatal variance between the complaint and the evidence. It is alleged in the complaint that the contract was entered into about the 1st of September, 1887. The evidence shows that it was entered into in the following February. The only variance between the allegations in the complaint and the evidence is in respect to the time when the contract was made. The date of the contract was not a material question. The material issue was whether there was a contract for the sale and purchase of 1,000 tons of paper. The defendant was in nowise misled by the variance, and, under the circumstances of this case, it was not a fatal one.

There was no conflict in the testimony over the amount of damages sustained by the plaintiff. Evidence was given showing that the difference between the contract price and the cost of the paper was thirty dollars per ton, and that the difference between the contract price for canceled tickets and their actual value was six dollars per ton. This was not disputed, and the court instructed the jury that if they found for the plaintiff it was entitled to recover these

differences, together with the sum conceded to be due for paper delivered. The verdict returned shows how they reached their result :

| | |
|---|---:|
| First cause of action.................... ............... | $415 |
| Second cause of action............................. | 27,160 |
| | $27,575 |
| Due defendant for canceled tickets........... ........ | 575 |
| Verdict rendered for........................... | $27,000 |

In the complaint the plaintiff demanded a judgment for $25,415.29, with interest from July 19, 1892. It is now insisted that the verdict rendered is in excess of the amount claimed in the complaint, and that the judgment should be reversed or reduced. The verdict was rendered November 20, 1894, and the jury were instructed that they might, in their discretion, allow interest on the damages awarded. The damages claimed in the complaint, with interest thereon to the date of the verdict, exceed the sum awarded by the jury, and it cannot be successfully contended that the damages rendered exceed the amount demanded.

The damages awarded seem large, but the contract was a large one, and the defendant did not contest the amount of the damages. After a careful reading of this record we are unable to find that any error was committed which requires or would justify the reversal of the judgment.

The judgment and order should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order affirmed, with costs.